IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DAVID C. CLARKE, :
:
    Plaintiff, :
:
v. : CIVIL ACTION 09-0685-M
:
MICHAEL J. ASTRUE, :
Commissioner of :
Social Security, :
:
    Defendant. :

## MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 18). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 24). Oral argument was waived in this action (Doc. 23). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Ser-

vices, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting* *Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty years old, had completed a high school education (Tr. 31-32), and had previous work experience as a saw hand with a logging company (Tr. 32). In claiming benefits, Plaintiff alleges disability due to pelvis fractures (Doc. 18 Fact Sheet).

The Plaintiff filed applications for disability insurance benefits and SSI on January 30, 2007 (Tr. 96-113). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not return to his past relevant work, Clarke was capable of performing light work with a sit/stand option (Tr. 14-25). Plaintiff requested review of the hearing decision (Tr. 6-7) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Clarke alleges that: (1) The ALJ did not properly consider his complaints of

pain; and (2) the ALJ improperly rejected his testimony concerning his limitations and abilities (Doc. 18). Defendant has responded to—and denies—these claims (Doc. 19). The relevant medical evidence of record follows.

On April 27, 2006, Clarke was working when a tree fell on him; he was admitted to the emergency room at Grove Hill Memorial Hospital and transferred to the University of South Alabama Medical Center for eight days of treatment; he was diagnosed to have fractures of the left superior and inferior rami and anterior column as well as a urethral transection (Tr. 223-255). Following surgical procedures, with no complications, Plaintiff was transferred to Rotary Rehabilitation at Mobile Infirmary for two weeks (Tr. 256-67). During the course of rehabilitation, Clarke's abilities changed as follows: supervision with eating to independence; minimal assistance with grooming to modified independence; total assistance with bathing, upper and lower body dressing, and toileting to moderate assistance with bathing, supervision with upper body dressing, and minimal assistance with lower body dressing and toileting. Moderate assistance with bed transfers remained at moderate assistance; Clarke progressed to minimal assistance with toilet transfers. A the time of his discharge, he was walking fifty feet with a rolling walker, with non-weight bearing in the left lower extremity and a stand-by attendant (Tr. 257). Plaintiff was discharged with a Foley

catheter still in place; he was in no apparent distress (Tr. 258).

On June 23, 2006, Dr. Sudhakar Madanagopal, Orthopaedic Surgeon at USAMC, saw Clarke in the clinic, who was complaining of swelling in the left thigh and pelvis; the doctor noted that Plaintiff would be admitted to the hospital to drain some of the fluid which had collected (Tr. 304; *see generally* Tr. 288-306). Clarke was admitted to USAMC on June 28, 2006, for two nights, for a Morrell-Lavell lesion of the left thigh which necessitated an uncomplicated procedure (Tr. 268-80). He was discharged, on crutches, and told not to put any weight on his left leg.

Dr. Greer Megginson, Urologist, removed Plaintiff's catheter on July 13, 2006 (Tr. 318). After removal, Clarke had no problems voiding, but complained of potency for which medications were prescribed (Tr. 315-17, 324).

On July 11, Dr. Madanagopal noted that Plaintiff had a significant decrease in swelling of the left hip and was neurovascularly intact in the left lower extremity; Clarke could begin weight bearing as tolerated (Tr. 302). The doctor prescribed Ultram[1] and Mobic.[2] On August 18, Madanagopal noted

---

[1] *Ultram* is an analgesic "indicated for the management of moderate to moderately severe pain." *Physician's Desk Reference* 2218 (54th ed. 2000).

[2] *Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis. *Physician's Desk Reference* 855-57 (62nd ed. 2008).

4

that the lesion was completely settled down and that the fracture was healing well; the doctor noted that it was time for Plaintiff to begin weaning himself off of the crutches and that he could return to sedentary work (Tr. 300). On September 22, the doctor noted that Plaintiff's gait was normal, but that he still had weakness on his hip extension and flexion; Madanagopal was going to send Clarke to a work hardening program to improve his strength (Tr. 298). On November 3, the doctor noted good progress with the program but that he still had several weeks of strengthening; Naprosyn[3] was prescribed.

On November 21, 2006, Clarke underwent a physical work performance evaluation by Ergo Science which determined that he was capable of performing medium level work, as defined by the *Dictionary of Occupational Titles*, for an eight-hour day (Tr. 395; *see generally* Tr. 395-404). On January 2, 2007, based on this work evaluation, Dr. Madanagopal declared maximum medical improvement, as of that date, and stated the following about Plaintiff's abilities:

> [H]is walking ability is frequent, his
> repeated squatting is frequent, his climbing
> stairs is frequent and crawling ability
> frequently, climbing ladder frequently. His
> main restrictions are mainly in lifting,

---

[3]*Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458 (52nd ed. 1998).

5

> carrying, pushing, and pulling. He is
> probably able to occasionally lift up to 50
> pounds and frequently lift up to 25 pounds
> and carry up to 10 pounds.

(Tr. 294). Plaintiff complained of left hip pain, for which he was given a cortisone shot (Tr. 294). Clarke was given another injection on February 13 which made him feel a lot better; another prescription for Naprosyn was written (Tr. 289-91). On March 30, the doctor noted that injections had helped with Plaintiff's trochanteric bursitis and that the pain had become minimal; Ultram was prescribed and Clarke was released from the clinic (Tr. 328). On October 9, 2007, Dr. Madanagopal noted that Plaintiff had not returned to work because of his concerns for pain; the doctor thought it best for Clarke to undergo another functional capacity evaluation to determine his actual restrictions (Tr. 326).

A second physical work performance evaluation was completed on October 25, 2007 by Ergo Science which, again, determined that Plaintiff was capable of sustaining medium level work for an eight-hour day (Tr. 413; *see generally* Tr. 413-21). The report specifically stated that Clarke could do the following on an occasional basis: lift forty-five pounds from the floor to his waist; lift forty pounds from his waist to eye level; carry forty-five pounds with two hands and thirty-five pounds with one hand; push forty-six pounds, pull thirty-four pounds; work bent

6

over, either standing or stooping; squat or crouch; and climb a ladder. On a frequent basis, Plaintiff could do the following: sit; work, while standing, with his arms over his head; climb; repeatedly squat; walk; and perform repetitive trunk rotation, while either standing or sitting. On a constant basis, Clarke could stand or kneel (Tr. 415). It was noted that Plaintiff completed the three-hour evaluation without any additional rest periods (Tr. 420). It was further noted that Clarke self-limited on greater than twenty percent of the tasks which was inconsistent with his abilities (Tr. 421).

On March 27, 2008, Plaintiff was admitted to Mississippi Baptist Medical Center for three days during which he underwent an excision and primary anastomosis of the posterior urethral stricture and posterior urethroplasty with SP tube placement and cystoscopy (Tr. 478-93).

On August 6, 2008, Huey Kidd, Doctor of Osteopathy, examined Clarke who was alert and interactive; he was able to heel walk, toe walk, bend and touch his toes, squat, and stand (Tr. 495-99). Plaintiff did have to hold on to the table to pull himself up. Deep tendon reflexes were intact throughout; he had full range of motion of the upper and lower extremities and 5/5 strength. It was Kidd's opinion that Clarke had no limits in sitting and could lift up to fifty pounds occasionally, twenty-five pounds frequently, and ten pounds constantly; he could carry up to ten

pounds constantly. Plaintiff could constantly push or pull with his arms, handle, finger, feel, talk, hear, and reach overhead; he could occasionally push or pull with his legs, balance, stoop, kneel, crouch, or crawl.

At the evidentiary hearing, Clarke testified that he has back pain and numbness; his constant back pain necessitates that he lie down on his right side (Tr. 34-35). His hip hurts daily, goes numbs, and tingles; two cortisone shots had helped some (Tr. 35, 47). The pain interfered with his ability to concentrate three days a week (Tr. 48). Plaintiff testified that he could walk farther than a block, stand about five minutes, sit for three minutes, lift a gallon of milk, climb twelve stairs, bend, stoop, and squat (Tr. 38-40). He cooked and washed dishes (Tr. 40). A Vocational Expert (hereinafter *VE*) testified as to various jobs a person, meeting certain hypothetical criterion, could perform (Tr. 51-56).

The ALJ determined that Clarke had the residual functional capacity fo perform light work, except that he would need to alternate sitting or standing every one-to-two hours to relieve pain (Tr. 19). In reaching this decision, the ALJ discounted Plaintiff's credibility, finding that his statements about his limitations were inconsistent with the medical evidence (Tr. 22). The ALJ also gave significant evidentiary weight to the opinion of Dr. Kidd (Tr. 22). The ALJ also found it "extremely

significant" that Clarke's treating physician found that he could return to work (Tr. 22). The ALJ relied on the VE's testimony in finding that Plaintiff could perform the jobs of cashier, gate guard, and counter clerk (Tr. 24).

Clarke has raised two claims in bringing this action, *viz.*, that (1) the ALJ did not properly consider his complaints of pain and (2) that the ALJ improperly rejected his testimony concerning his limitations and abilities (Doc. 18). The Court will address these two claims together.

The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d

9

428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R.. 404.1529(a) (2009).

Plaintiff's claims are without merit. The objective medical evidence demonstrates that although Clarke suffered a serious injury, he recuperated for less than a full year before his treating physician released him to go back to work. The conclusions from two different work assessments were that Plaintiff was capable of performing sustained medium work for an eight-hour day. While the Plaintiff may still suffer some pain and limitations from the accident, the Court finds substantial support for the ALJ's conclusions that they do not rise to the extent expressed by Clarke.

Plaintiff has asserted that the ALJ erred in finding that he had not been hospitalized since his injury (Doc. 18, p. 9; *cf.*

Tr. 23). While the ALJ did reach this conclusion, she has fairly summarized the medical evidence of record, including his hospitalizations; this conclusion is, at most, harmless error.

Clarke also challenged the ALJ's finding that his pain was controlled by prescription and over-the-counter medications (Doc. 18, p. 9; Tr. 23). Plaintiff has not pointed to anything, other than his own testimony, to rebut the ALJ's conclusion. The Court finds no merit in the argument.

Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, see *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), that this action be **DISMISSED**. Judgment will be entered by separate Order.

DONE this 21st day of May, 2010.

    s/BERT W. MILLING, JR.
    UNITED STATES MAGISTRATE JUDGE